```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


OAKWOOD APARTMENTS, LLC,        )
                                )
            Plaintiff,          )
     v.                         )         1:13CV208
                                )
KPC PROPERTIES, LLC, a/k/a      )
KPC PROPERTIES, INC., and       )
SMOLER & ASSOCIATES, P.A.,      )
                                )
            Defendants.         )
```

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently pending and ripe for ruling is a Motion for Summary Judgment (Doc. 22) filed by Plaintiff Oakwood Apartments, LLC ("Plaintiff"). Defendants KPC Properties, LLC ("KPC") and Smoler & Associates ("Smoler") have timely responded (Doc. 34), and Plaintiff has filed a reply (Doc. 36). For the reasons that follow, this court will grant the motion in part and deny it in part.

### I.    BACKGROUND

On or around July 17, 2012, Plaintiff, a North Carolina limited liability company, agreed to sell Defendant KPC, a Florida limited liability company, a 140-unit apartment complex located in Catawba County, North Carolina ("Property").

(Complaint ("Compl.") (Doc. 2) ¶¶ 1-2, 6.) The Purchase and Sale Agreement ("Contract") contemplated a closing date of August 31, 2012 ("Closing Date") (id. ¶ 7), which was later amended to October 12, 2012 ("New Closing Date") (Defs.' Answer ("Answer"), Ex. B, First Amendment to Purchase and Sale Agreement ("Amendment") (Doc. 7-2) ¶ 4). Defendant KPC deposited $200,000 with Defendant Smoler & Associates, P.A. (the escrow holder) pursuant to the Contract's terms. (Compl. (Doc. 2) ¶¶ 3, 7-8.) A separate clause provided that the deposit would be "non-refundable unless . . . (b) [Defendant KPC] is unable to obtain financing in an amount equal to at least 80% of the Value of the Property at a rate of 5.25% for a term of 60 months." (Answer, Ex. A, Purchase and Sale Agreement ("Contract") (Doc. 7-1) § 1.3.1(b).) Subsequent to the execution of the Contract, the parties amended this provision to make the deposit non-refundable unless "[KPC] is unable to obtain financing in an amount equal to at least 75% of the Value of the Property . . . [,]" instead. (Id., Ex. B, Amendment (Doc. 7-2) ¶ 2.) Neither the Contract nor the Amendment defines the term "Value of the Property," although the Contract states that the contemplated purchase price was $5,700,000. (Id., Ex. A, Contract (Doc. 7-1) § 1.2.)

The parties agree that they failed to complete their transaction before the revised closing date of October 12, 2012. But they disagree on whether KPC should face legal liability, as well as whether KPC is entitled to a refund of the $200,000 deposit currently held in escrow by Defendant Smoler. Plaintiff has alleged a breach of contract claim against Defendant KPC, asserting that KPC "obtained the financing called for in the [contract], but then failed and refused to close by . . . the New Closing Date." (Compl. (Doc. 2) ¶¶ 11-15.) Plaintiff also raises a claim for breach of fiduciary duty against Defendant Smoler, seeking damages of no less than the $200,000 deposit amount should this court determine that Defendant Smoler erroneously returned the deposit to Defendant KPC. (Id. ¶¶ 16-19.) Finally, Plaintiff seeks attorneys' fees, which the Contract purports to make recoverable by the "prevailing party" in any litigation over the Contract. (Id. ¶¶ 20-22.)

## II.  LEGAL STANDARD

A motion for summary judgment is appropriately denied when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the court's job is

not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all inferences favorable to that party if such inferences are reasonable. Id. at 255. However, there must be more than a mere factual dispute; the fact in question must be material, and the dispute must be genuine. Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**III. ANALYSIS**

    **A. Breach of Contract Claim Against Defendant KPC**

        **i. Failure of a Condition Precedent**

In North Carolina, contracts contingent on the ability of one party to obtain sufficient financing are not void for want of consideration. See Mezzanotte v. Freeland, 20 N.C. App. 11, 19, 200 S.E.2d 410, 416 (1973), cert. denied, 284 N.C. 616, 201 S.E.2d 689 (1974). Instead, the party responsible for obtaining financing is charged with an implied promise to "act in good faith and [make] a reasonable effort to secure the financing." Smith v. Currie, 40 N.C. App. 739, 742, 253 S.E.2d 645, 647 (1979) (citing Mezzanotte, 20 N.C. App. 11, 200 S.E.2d 410 (1973)).

With respect to Defendant KPC's obligation to secure financing in this case, this court finds that certain factual disputes preclude an entry of summary judgment in Plaintiff's favor. The parties agree that the Contract, as amended, required Defendant "to obtain financing in an amount equal to at least 75% of the value of the Property at a rate of 5.25% for a term of sixty (60) months." (Answer, Ex. B, Amendment (Doc. 7-2) ¶ 2.) Defendant KPC pled an inability to obtain funding as an affirmative defense to the action (See Answer (Doc. 7) at 3-4), but Plaintiff asks this court to find that Defendant KPC's efforts to obtain funding were unreasonable, and therefore non-excusable. (See Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (Doc. 25) at 6-9.)

Plaintiff and Defendant KPC agree that Plaintiff's agent, Stephen Olson, played a major role in Defendant's financing search. (See Pl.'s Mem. (Doc. 25) at 6) ("[T]he only loan KPC applied for was through a lender brought to KPC by Steve Olson."); (Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Resp.") (Doc. 34) at 2 ("Stephen Olson . . . vetted numerous prospects for financing KPC's acquisition of the Property." (citing Deposition of Krishna Persaud ("Persaud Dep.") (Doc. 25-3) at 23)).) As a result, Plaintiff argues, "KPC . . . did not seek out any lenders whatsoever, on its own,

in an attempt to obtain financing." (Pl.'s Mem. (Doc. 25) at 6 (citing Persaud Dep. (Doc. 25-3) at 23-24).) Instead, Plaintiff asserts, Defendant applied only to Pillar Multifamily, LLC ("Pillar"), "a single lender . . . suggested by [Plaintiff]'s agent . . . ." (Id. at 7.) According to Plaintiff, Pillar was "not [a lender] identified by KPC[] as being likely to make the loan[,]" nor one "with which KPC had enjoyed a past relationship." (Id.) Plaintiff argues that this alone was enough to render Defendant's efforts legally "unreasonable," but further argues that "KPC canceled that loan [application] before the loan approval process was complete and made no further attempts to obtain financing" – yet another "unreasonable" action. (Id. at 8 (citing Persaud Dep. (Doc. 25) at 23-24).)

For its part, Defendant KPC articulates different facts, which this court finds sufficient to preclude a grant of summary judgment in Plaintiff's favor. KPC contends that, with the help of Stephen Olson and Kimberly Kirk, an independent broker, it submitted loan applications to two lenders, not one: Pillar, and Arbor Commercial Mortgage, LLC ("Arbor"). (Defs.' Resp. (Doc. 34) at 2 (citing Affidavit of Krishna Persaud ("Persaud Aff.") (Doc. 35) ¶¶ 12, 14-15.) These loan applications were submitted in May and June of 2012, respectively. (Persaud Aff. (Doc. 35) ¶¶ 14-15.) Defendant KPC apparently chose the loan offered by

- 6 -

Pillar over that offered by Arbor (id. ¶ 16), and claims that it provided all the necessary documentation, including financial statements, tax returns, property appraisal, title insurance commitment, a land survey, and operating agreements (id. ¶ 17). According to Defendant KPC, all paperwork was signed, finalized, and mailed to Pillar via Federal Express on October 16, 2012, in anticipation of the revised October 18 closing date. (Id. ¶ 18.) Allegedly, however, Pillar "revisited the underwriting of the loan" on October 17 and "decreased the offered loan amount from $4,275,000.00 to $3,545,000.00." (Id. ¶ 19.) The revised loan amount only amounted to 62% of the purchase price of $5,700,000.00, instead of the 75% required, resulting in a failed condition precedent.

Given this factual dispute, this court is unable to grant summary judgment for Plaintiff, because Plaintiff has failed to show that there are no genuine issues of material fact. The exact nature of Defendant KPC's actions is critical to a determination of reasonableness, and cannot be decided on the current factual record.

Moreover, several North Carolina cases have counseled that the question of whether a purchaser's efforts to obtain funding

were "reasonable" should be decided at trial.[1] See MCI Constructors, Inc. v. Hazen & Sawyer, P.C., 401 F. Supp. 2d 504, 510 (M.D.N.C. 2005) ("[T]he issue of the reasonableness of a defendant's efforts [will] not usually be decided by a judge on summary judgment.") This is because the question of

> [w]hether the defendant . . . made reasonable efforts . . . to obtain financing is precisely the type of

---

[1] The same prescription applies to the question of whether a buyer made a "good faith effort" to obtain funding. Typically, however, the question of whether a buyer's actions were made in "good faith" applies to situations where "a contract confers on one party a discretionary power affecting the rights of the other party . . . ." MCI Constructors, Inc. v. City of Greensboro, 125 Fed. Appx. 471, 477 (4th Cir. 2005). In other words, "good faith" is generally only an issue where one party has the option to terminate the contract based on some subjective standard. See, e.g., 42 East, LLC v. D.R. Horton, Inc., ___ N.C. ___, ___, 722 S.E.2d 1, 9 (2012) ("[I]n deciding whether a party properly terminated a contract pursuant to a satisfaction clause, the question is whether the party acted in good faith."); Fulcher v. Nelson, 273 N.C. 221, 224, 159 S.E.2d 519, 522 (1968) (holding that a buyer given the right to "trade back" his newly-purchased car to the dealer "if not happy" with it could only do so if his decision was made in "good faith on account of his dissatisfaction with the condition in which he found the [car]"). In this case, rather than a financing clause conditioning the contract on Defendant KPC's ability "to obtain financing terms satisfactory to KPC," the contract includes very specific financing terms Defendant KPC must obtain ("75% of the value of the Property at a rate of 5.25% for a term of sixty (60) months"). Therefore, this does not appear to be a case in which the good faith standard applies. Instead, based on this record, arguably the only issue for trial is whether Defendant KPC's efforts to meet these minimum financing requirements were reasonable. To the extent the parties disagree with the analysis contained in this footnote, they should be prepared to address that with the trial court in the proposed jury instructions and with case law to support their positions.

> question that depends for its resolution on a consideration of the subjective intentions and motivation of the actor. Such an inquiry necessarily involves conflicting interpretations of the perceived events, and even where all the surrounding facts and circumstances are known, reasonable minds may still differ over their application to the legal principle involved.

Currie, 40 N.C. App. at 743, 253 S.E.2d at 647; cf. Wilder v. Squires, 68 N.C. App. 310, 315, 315 S.E.2d 63, 66 (1984) ("Whether a prospective home buyer has indeed made a good faith effort is a question for the jury."); Smith v. Dickinson, 57 N.C. App. 155, 290 S.E.2d 770, 773 (1982) (denying summary judgment on the question of whether a husband used reasonable efforts to obtain a loan when it was unclear whether he knew he would be able to convince his wife to comply with the requirements); Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C. App. 743, 747, 253 S.E.2d 625, 628 (1979) ("[W]e think that when the evidence is considered in the light most favorable to the defendant, it is sufficient to permit the jury to find that the plaintiff breached its contract with the defendant by failing to make reasonable efforts . . . .").

For the foregoing reasons, this court will deny Plaintiff's motion for summary judgment as to Defendant's failure to obtain financing before the closing date.

### ii. Mutual Mistake

Plaintiff further moves for summary judgment on Defendant's argument that a mutual mistake existed as to the wording of the contract. Specifically, Plaintiff refutes Defendant KPC's contention that the parties intended the contractual phrase "Value of the Property" to read "purchase price of the property," instead. (See Answer (Doc. 7) at 3.)

A mutual mistake is "'a mistake common to all the parties to a written instrument . . . [which] usually relates to a mistake concerning its contents or its legal effect.'" Sykes v. Keiltex Indus., Inc., 123 N.C. App. 482, 486, 473 S.E.2d 341, 344 (1996) (emphasis added) (alteration in original) (quoting M.P. Hubbard & Co. v. Horne, 203 N.C. 205, 208, 165 S.E. 347, 349 (1932)). To be a valid defense to the enforcement of an otherwise binding contract,

> [T]he mutual mistake "must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, . . . the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties."

Herring v. Herring, ___ N.C. App. ___, ___, 752 S.E.2d 190, 192 (2013) (quoting MacKay v. McIntosh, 270 N.C. 69, 73, 153 S.E.2d 800, 804 (1967)).

"The party seeking to reform or rescind the contract bears the burden of proving the existence of a mutual mistake by clear, cogent, and convincing evidence." Id. at ___, 752 S.E.2d at 193 (citing Smith v. First Choice Servs., 158 N.C. App. 244, 249, 580 S.E.2d 743, 748, disc. review denied, 357 N.C. 461, 586 S.E.2d 99 (2003)). The party raising the defense "must [also] state with particularity the circumstances constituting mistake as to all of the parties to the written instrument." Best v. Ford Motor Co., 148 N.C. App. 42, 47, 557 S.E.2d 163, 166 (2001) aff'd, 355 N.C. 486, 562 S.E.2d 419 (2002).

This court finds that summary judgment should be granted for a number of reasons. First, Defendant has failed to produce any evidence that either party was "mistaken" as to the wording of the contract outside of the bare allegations made in the Answer. The only evidence in the record relevant to the issue of mutual mistake is an affidavit filed by Rodney Smith, signatory to the Contract on behalf of Plaintiff, in which Mr. Smith avers "[t]hat the Contract and Amendment . . . accurately reflect the terms and conditions that I intended and agreed to." (Affidavit of Rodney D. Smith ("Smith Aff.") (Doc. 23) ¶ 7.) Moreover, this court notes that the Amendment to the Contract contains the same "Value of the Property" language as the original Contract – further indicating that neither party was "mistaken" as to what

language was included. (Answer, Ex. B, Amendment (Doc. 7-2) ¶ 2.)

Because there is no evidence purporting to show that either party labored under a mistake of fact, much less that both parties labored under the same mistake of fact, this court will grant summary judgment as to that issue.

### iii. Waiver and Estoppel

Plaintiff also seeks summary judgment as to Defendant's defenses of waiver and estoppel. As with the defense of mutual mistake, Defendant KPC has the burden of proof on these issues. See Nationwide Mut. Ins. Co. v. Edwards, 67 N.C. App. 1, 6, 312 S.E.2d 656, 660 (1984) ("The party claiming protection under the rule of equitable estoppel has the burden of establishing facts warranting its application."); Lyon v. Shelter Res. Corp., 40 N.C. App. 557, 560, 253 S.E.2d 277, 280 (1979) ("A defense based on waiver or release is an affirmative defense and, therefore, the defendant bears the burden of proof.").

However, as with its claim of mutual mistake, Defendant KPC has failed to present sufficient supporting evidence, and does not argue either defense in its Response to Plaintiff's Motion for Summary Judgment. Additionally, Krishna Persaud, a principal of Defendant KPC, stated in his deposition that he had no knowledge of any basis for a waiver or estoppel defense (Persaud

Dep. (Doc. 25-3) at 44-45), and no other deponents testified as to any other facts which would support such claims.

Consequently, because Plaintiff has demonstrated that no issues of material fact exist, this court will grant summary judgment on this issue.

### iv. Attorneys' Fees

As a final matter, Plaintiff seeks attorneys' fees under the Contract. The relevant section (§ 10.14) provides:

> Attorneys' Fees. In the event of any litigation involving the parties to this Agreement to enforce any provision on this Agreement, to enforce any remedy available upon default under this Agreement, or seeking a declaration of the rights of either party under this Agreement, the prevailing party shall be entitled to recover from the other such attorneys' fees and costs as may be reasonably incurred, including the costs of reasonable investigation, preparation and professional or expert consultation incurred by reason of such litigation. All other attorneys' fees and costs relating to this Agreement and the transactions contemplated hereby shall be borne by the party incurring the same.

(Answer, Ex. A, Contract (Doc. 7-1) § 10.14.)

The section contemplates that the "prevailing party" to any litigation shall be entitled to attorneys' fees. Because outstanding issues remain for trial, however, granting summary judgment to Plaintiff on this issue would be premature.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** as to Defendant's affirmative defenses of mutual mistake, waiver, and estoppel, and **DENIED** as to the reasonableness of Defendant's efforts to obtain appropriate financing and Plaintiff's request for an award of attorneys' fees.

This the 10th day of June, 2014.

/s/ William L. Osteen, Jr.
_____
United States District Judge