UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| OAKWOOD APARTMENTS, LLC, | ) | Case No. 1:13-CV-208 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KPC PROPERTIES, LLC, a/k/a KPC PROPERTIES, INC., and SMOLER & ASSOCIATES, P.A., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## TRIAL BRIEF

Oakwood filed this contract action seeking damages in the form of a $200,000.00 earnest money deposit (the "Deposit") made by Defendant KPC PROPERTIES, LLC, a/k/a KPC PROPERTIES, INC. (hereinafter referred to as "KPC") in connection with a certain Purchase and Sale Agreement dated July 17, 2012, as subsequently amended (the "Contract") for certain property more commonly known as Oakwood Apartments, more fully described in that certain Deed recorded in Deed Book 2792, Page 0816 in the Office of the Catawba County Register of Deeds (hereinafter referred to as the "Property"). The Deposit is said to be held in escrow by Defendant SMOLER & ASSOCIATES, P.A. (hereinafter referred to as "Smoler") [hereinafter Defendants KPC and Smoler are sometimes collectively referred to as "Defendants"]. Plaintiff filed a Motion for Summary Judgment, which was granted in part and denied in part. Pursuant to the Memorandum Opinion and Order entered June 10, 2014, the only questions remaining for trial are (1) whether KPC exercised reasonable efforts to obtain financing and (2) whether Oakwood is entitled to attorney fees and costs. Oakwood contends KPC did not exercise

1

reasonable efforts to obtain financing and therefore it is in breach of the Contract. Accordingly, Oakwood is entitled to recover the Deposit as well as its attorney fees and costs.

**I.  KPC is barred from claiming failure of a condition precedent as it failed to use reasonable efforts to secure financing entitling Oakwood to the Deposit.**

On or about July 17, 2012 Oakwood and Defendant KPC entered into the Contract wherein KPC agreed to purchase from Oakwood and Oakwood agreed to sell to KPC that certain 140 unit apartment complex more particularly described in that certain Deed recorded in Deed Book 2792, Page 0816 in the Office of the Catawba County Register of Deeds (hereinafter referred to as the "Property"). The Contract called for a Closing Date of August 31, 2012 (hereinafter referred to as the "Closing Date") or earlier.

Section 1.3.1 of the Contract provides *inter alia* that:

> Buyer [referring to KPC] has heretofore deposited the sum of $200,000.00 (hereinafter referred to as the "Deposit") with [Defendant] Smoler & Associates and is "non-refundable unless either of the following events shall occur."
>
> a) Seller shall, upon tender of the Purchase Price, either be unable or unwilling to deliver marketable or insurable title to the Property to the buyer by Special Warranty Deed; or
>
> b) Buyer is unable to obtain financing in an amount equal to at least 80% of the value of the Property at a rate of 5.25% for a term of 60 months.

The Contract was supported by the $200,000.00 Deposit paid by KPC to Smoler as Escrow Agent. Plainiff's claim against Smoler as the escrow agent is limited to the Deposit that Smoler is said to be holding [assuming Smoler is in fact holding the Deposit].

Pursuant to Section 1.4 of the Contract the closing was to take place "on August 31, [2012] or earlier." The closing did not take place on the scheduled Closing Date; however, the Contract was amended pursuant to that certain "First Amendment to Purchase and Sale

Agreement" (hereinafter referred to as "First Contract Amendment"), which, in pertinent part, provides the following:

> Section 1.3.1 b) shall be and is hereby deleted in its entirety and the following shall be inserted in lieu thereof:
>
>> Buyer is unable to obtain financing in an amount equal to at least 75% of the value of the property at a rate of 5.25% for a term of sixty (60) months.

The Closing Date in section 1.4 of the Contract was also changed to reflect a closing date of on or before October 12, 2012 (hereinafter referred to as the "New Closing Date") pursuant to the First Contract Amendment.

> Section 7.2 of the Contract, as amended provides the following:
>
>> 7.2 <u>Failure to Close</u>. If Buyer is not in a position to close the Escrow on the Closing Date, then this Agreement shall terminate, except that no such termination shall relieve the Buyer of liability for any failure to comply with the terms of this Agreement.

At or about the new Closing Date, the Buyer, informed Oakwood that it would not be purchasing the Property. When Oakwood received notice that KPC was terminating the Contract, as amended, it notified Defendant Smoler that it claimed the Deposit pursuant to Section 1.3.1 of the Contract, as amended. Defendants refused to release the Deposit to Oakwood causing Oakwood to file this action for Breach of Contract, Breach of Fiduciary Duty, and Attorney Fees in the Alamance County Superior Court. Defendants subsequently removed the case to this Court. KPC claims it is excused from performing because there was an alleged failure of a condition precedent in that it was unable to obtain financing at seventy-five percent (75%) of the Property's value.

  a.  **KPC had a duty to seek financing.**

3

The North Carolina Court of Appeals decided the issue of the purchaser's duty to seek financing in those instances where the contract is contingent upon the purchaser obtaining financing in the case of Mezzanette v. Freeland, 20 N.C. App. 11, 200 S.E. 2d 410 (1973), *cert. denied,* 284 N.C. 616, 201 S.E.2d 689 (1974). Specifically, the Court of Appeals held:

> In North Carolina a "subject to financing clause", such as the one contained in the "Offer to Purchase Agreement" in the present case, includes the implied promise that the purchaser will act in good faith and make a reasonable effort to secure financing. Smith v. Currie, 40 N.C. App. 739, 742, 253 S.E.2d 645, 647 (1979) *citing* Mezzanette.

This Court in MCI Constructors, Inc. v. Hazen, 401 F. Supp. 504, 2005 U.S. Dist LEXIS 30536 (N.C.M.D. 2005) followed the reasonableness standard adopted by the North Carolina Court of Appeals in Mezzanette. "The reasonableness standard outlined in Mezzanette has most commonly been applied to situations in which one party to a contract is required to use 'reasonable efforts' to ensure a condition precedent was satisfied." Id. at 509, 2005 U.S. Dist. LEXIS 30536 at 12-13.

### b.  KPC did not use reasonable efforts to obtain financing.

Oakwood contends KPC did not use reasonable efforts to obtain financing because KPC (1) only contacted a single loan broker recommended by Steve Olson, whom the Defendants identified as the Seller's real estate broker [not KPC's real estate broker]; (2) completed only a single loan application; (3) made no application to any lender with whom KPC and its principals had existing relationships on other apartment projects or otherwise; (4) made no effort to negotiate a higher loan amount with the only lender from which it had attempted to obtain financing; (5) failed to attempt any other financing or to request a closing date extension from Oakwood when the only lender to which it applied [that was recommended by the Seller's real estate broker] refused to recognize the value of the Property as appraised; and (6) canceled the

4

only loan it applied for. Upon KPC's cancellation of the loan and Contract, Oakwood notified Smoler that it claimed the Deposit pursuant to Section 1.3.1 of the Contract, as amended.

KPC contends that there was a failure of a condition precedent in that it could not obtain suitable financing to purchase the Property. KPC claims it used its best efforts and "diligently complied with its chosen lender's requirements" in attempting to obtain financing for its purchase of the Property at issue in this action. (KPC's Opp'n Mem., p. 5). The Affidavit of one of KPC's principals, Kris Persaud (hereinafter referred to as "Mr. Persaud"), offered in opposition to Oakwood's Motion for Summary Judgment, is presumably supposed to support that contention.

KPC's Opposition Memorandum and Mr. Persuad's affidavit attempt to persuade the Court that KPC went to great lengths over a five-month period to obtain financing. (KPC's Opp'n Mem., pp. 4-5; Persuad Aff. para. 9). However, KPC's "five-month loan pursuit" consists of only: (1) a loan assumption attempt, which is not a separate loan at all; and (2) to contact a loan broker, Ms. Kirk [who was recommended by Oakwood's real estate broker, Mr, Olson], with whom KPC had **no** existing relationship. Thus, while the span of time [five months] may seem significant, the efforts taken during that span of time were minimal and not reasonable.

As Mr. Persaud testified in his deposition, KPC and/or its principals are experienced in investing in real estate and managing apartment complexes [as it owns five other apartment complexes with other investors]. (Persaud's Dep. 17:11-19:4). Accordingly, had KPC been acting in good faith and with reasonable effort when it learned that Pillar Multifamily, LLC (hereinafter referred to as "Pillar") had unilaterally declared the value of the Property to be less than its actual appraised value, it would have sought financing for the Property from an alternate lender; a lender with which it had an existing business relationship with knowledge of KPC's

5

capabilities of managing such a property being the most obvious. KPC's failure to seek financing from a lender with which it enjoyed an existing business relationship in its five (5) other properties cannot reasonably be viewed as acting in good faith and making a reasonable effort to obtain financing to purchase the Oakwood Property. (Persaud Dep. 23:16-24:5).

The value of the Property based on the <u>only</u> appraisal completed was $5,700,000.00. Pillar never refused to make the loan based on a seventy-five percent (75%) value. Pillar instead refused to recognize the appraised value of $5,700,000 as the true value of the Property. That decision by Pillar does not change the fact that the only appraisal performed on the Property in connection with the transaction set its value at $5,700,000.00, which was also the purchase price in the Contract. Therefore another lender could have formed a completely different conclusion and made the loan based on the $5,700,000.00 appraisal had KPC made the effort.

"The reasonableness standard outlined in <u>Mezzanette</u> has most commonly been applied to situations in which one party to a contract is required to use "reasonable efforts" to ensure that a condition precedent was satisfied." <u>MCI Constructors</u> at 509-510, 2005 U.S. Dist LEXIS 30536, at 12 *see* <u>Resort Realty of Outer Banks, Inc. v. Brandt</u>, 163 N.C. App. 114, 593 S.E. 2d 404 (N.C. Ct. App. 2004) (defendant had a duty to use good faith and reasonable efforts to secure a replacement property).

When Pillar notified KPC that it was not accepting the appraised value of $5,700,000.00 [even though there was no other appraised value to the contrary], KPC canceled its loan and made no further attempts to obtain financing. (Persaud Dep. 28:15-29:19, Ex. 3). KPC never attempted to get the Property financed with a lender with whom it had any past or existing relationship. Accordingly, KPC neither acted in good faith nor reasonably in attempting to obtain

financing. Such action on the part of KPC is a breach of the Contract. Therefore, KPC cannot now claim the Deposit.

Oakwood is informed and therefore believes that KPC relies on <u>In Re: Michael L. Kirkbride</u>, 409 B.R. 354 at 358 (E.D. North Carolina 2009), 2009 Bankr. LEXIS 2207; <u>Alan Votta Constr., Inc. v. Kirkbride</u>, 2010 U.S. Dist. LEXIS 14283 (N.C.E.D. 2010), in support of its position in this case. In the <u>Kirkbride</u> case the defendants were unable to obtain a loan because of their number of outstanding debts. First it is important to note, that that there has never been an indication KPC could not get a loan due to its already having too many loans. More important to the issue in this case is the fact that the defendants in <u>Kirkbride</u> **were working with a broker, Mark Monroe, "with whom they had worked on previous occasions**" <u>Kirkbride</u>, at 358, 2009 Bankr. LEXIS 2207 at 7 *(emphasis added)*. "**The broker maintained all of the [purchasers'/] debtors' current financial information, and regularly researched loans on their behalf. This was common practice for the debtors who were in the business of real estate development**." <u>Id.</u> *(emphasis added).* In other words the broker in <u>Kirkbride</u> was one with whom Kirkbride had worked before. That fact was significant to the <u>Kirkbride</u> Court in finding the Kirkbrides, as the purchasers of the property at issue in that action, had acted reasonably even though they were unable to obtain financing. In this instance the converse is also true. KPC's failure to seek financing from a lender with whom it had a business relationship is clear evidence KPC failed to use reasonable efforts to obtain financing. As noted above, KPC never applied to a lender with whom it had ever worked before, even though KPC was in the business of owning and operating apartment complexes and currently has five (5) complexes, each of which are financed. (Persuad Dep. 18:1-23). Who better to obtain one's financing from than a broker that already knows your finances and your ability to run and manage a property such as the one at issue in this action.

7

KPC, by its own admission made no attempt to seek financing from any lender with whom it enjoyed a business relationship. (Persuad Dep. 23:16-24:4).

Accordingly, there are several critical distinctions between the <u>Kirkbride</u> defendants, whose actions the Court found were reasonable, and KPC, which indicate that KPC's actions were not reasonable:

(1) The defendants in <u>Kirkbride</u> utilized the services of a broker with "***whom they had worked on previous occasions***." <u>Kirkbride</u> at 358, 2009 Bankr. LEXIS 2207 at 7, *emphasis added*, while KPC did not contact a broker with whom it had ever worked but instead contacted a broker with whom it had never worked;

(2) The <u>Kirkbride</u> defendants were denied a loan because they had too many properties and insufficient reserves. <u>Id.</u> KPC was not denied a loan, nor is there any evidence that KPC's financial status or debt ratio was an issue. Pillar's refusal to accept the $5,700,000 appraised value as the true value of the Property does not reflect any inability of KPC to obtain a loan and does not infer that a different lender would decide the same way. (Persuad Aff. Ex. F); and

(3) The <u>Kirkbride</u> broker checked with numerous lenders on the Kirkbrides' behalf while KPC applied with a single lender.

Oakwood contends that KPC's single loan application made through a broker with whom it did not have a prior relationship [two examples of reasonableness found in <u>Kirkdale</u> but not present with KPC] is not a reasonable effort to obtain financing, therefore entitling Oakwood to the Deposit and its attorney fees. KPC prevented the performance of the financing condition as it failed to make a reasonable effort to satisfy the condition.

> When a party, whose obligations it is to fulfill a condition precedent contained in a contract, clearly repudiates his obligation to act in good faith and ensure that

8

reasonable efforts are taken to fulfill the condition, the other party acquires rights under the contract and may sue to enforce those rights.

Gupton v. Son-Lan, 205 N.C. App. 133, 140, 695 S.E. 2d 763, 769 (2010) *citing* Accord Carson v. Grassmann, 182 N.C. App. 521, 525, 642 S.E. 2d 537, 540. Having impliedly promised to exercise good faith and to use reasonable efforts to obtain a loan, KPC had a contractual duty to take all reasonable steps to obtain financing.

As held in Mezzanette, "[o]ne who prevents the performance of a condition, or makes it impossible by his own act, shall not take advantage of the nonperformance." Mezzanette at 20, 200 S.E. 2d at 416 citations omitted.

For the foregoing reasons, KPC failed to use reasonable efforts to obtain financing of its purchase of the Property and as a result breached the Contract.

### III. Oakwood is entitled to recover its Attorney Fees

The Contract calls for attorney fees to be recovered by the prevailing party in the event of a dispute. In pursuing this action, Oakwood now seeks its Attorneys' Fees under Section 10.14 of the Contract, as amended, which provides the following:

> 10.14 Attorneys' Fees. In the event of any litigation involving the parties to this Agreement to enforce any provision of this Agreement, to enforce any remedy available upon default under this Agreement, or seeking a declaration of the rights of either party under this agreement, the prevailing party shall be entitled to recover from the other such attorneys' fees and costs as may be reasonably incurred, including the costs of reasonable investigation, preparation and professional or expert consultation incurred by reason of such litigation. All other attorneys' fees and costs relating to this Agreement and the transactions contemplated hereby shall be borne by the party incurring the same.

Pursuant to N.C. Gen Stat. § 6-20, "In actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court."

9

Accordingly, Oakwood requests the Court order the attorneys' fees and expenses related to this litigation be awarded to Plaintiff.

Respectfully submitted this the 16th day of June, 2014.

/s/ James K. Pendergrass, Jr.
PENDERGRASS LAW FIRM, PLLC
P.O. Drawer 33809
Raleigh, NC 27636
Telephone: (919) 510-9559
N.C. Bar # 14183
Email: jpendergrass@pendergrasslawfirm.com

# CERTIFICATE OF SERVICE

  This is to certify that I have this day served a copy of the foregoing Trial Brief in this action by depositing a copy of the same in a postage paid depository under the exclusive care and custody of the United States Postal Office Department addressed to:

Geoffrey K. Oertel
OERTEL KOONTS & OERTEL, PLLC
3493 Forestdale Drive, Suite 103
Burlington, NC  27215

Patrick Patrissi
SMOLER & ASSOCIATES, PA
2611 Hollywood Boulevard
Hollywood, FL 33020

This the 16th day of June, 2014.

                /s/ James K. Pendergrass, Jr.
                PENDERGRASS LAW FIRM, PLLC
                P.O. Drawer 33809
                Raleigh, NC 27636
                Telephone: (919) 510-9559
                N.C. Bar # 14183
                Email: jpendergrass@pendergrasslawfirm.com